IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

MICHAEL L. BEATTY,

      Plaintiff,

v.                                    Case No. 2:14-cv-25774

CITY OF CHARLESTON, WV, and
BRIAN A. LIGHTNER, Senior Officer,
Charleston Police Department,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

On September 15, 2014, the plaintiff filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and a Complaint alleging that, on August 17, 2014, defendant Lightner conducted an illegal search and seizure in violation of the plaintiff's constitutional rights (ECF No. 2).  This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is a Motion to Dismiss filed by Senior Officer Brian A. Lightner (ECF No. 8) and a Motion to Dismiss filed by the City of Charleston (ECF No. 10).

## PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY

According to the Complaint, the plaintiff arrived at the Heart and Seoul Bar (hereinafter "the Bar"), at 4:20 a.m. on Sunday, August 17, 2014, where he observed Senior Officer Brian A. Lightner (hereinafter "Lightner") attempting to gain entrance to the Bar in order to investigate why there were persons still in the Bar after hours.  The

plaintiff further alleges that Lightner noticed the plaintiff standing in the parking lot, approached him, and, "in a hostile and intimidating manner," asked him to identify himself. The plaintiff stated that he worked security for the Bar, but had been working an event at another venue that night. The plaintiff further alleges that Lightner patted him down and asked if he had any weapons, to which the plaintiff responded that he had a concealed weapon and a concealed weapons permit. According to the plaintiff, Lightner then located the plaintiff's Glock 17 9 mm pistol, seized it from its holster, and temporarily confiscated it. The plaintiff maintains that he complied with all of Lightner's instructions, while waiting for another officer to arrive.

The plaintiff alleges that he requested to speak to the Shift Commander, but was advised that he would be unable to do so until a later time. However, at approximately 4:34 a.m., Sgt. R. Henderson (hereinafter "Henderson") and three other Charleston Police Department officers arrived on the scene. The plaintiff alleges that he told Henderson that Lightner had been hostile and aggressive and had taken his pistol without probable cause, even after the plaintiff had informed him that he had a concealed weapons permit. The plaintiff further alleges that he showed Henderson his West Virginia driver's license and his West Virginia concealed weapons permit, both of which Henderson provided to Lightner.

The plaintiff further alleges that he was asked to step away from the scene, so he moved across the street, at which time he witnessed the owner of the Bar, Donald Williams, being placed into custody. The plaintiff further alleges that Mr. Williams later informed him that Lightner ran the serial number of the plaintiff's Glock 17 9 mm pistol, despite having the paperwork indicating that the plaintiff could carry a concealed weapon. Thus, the plaintiff alleges that Lightner acted without probable cause, in

2

violation of his Fourth Amendment rights. The plaintiff's Complaint seeks $25 million dollars in damages. The plaintiff attached the police report concerning this incident to his Complaint. (ECF No. 2 at 3-4).

Following service of process, on November 12, 2014, defendant Lightner filed a Motion to Dismiss (ECF No. 8) and a Memorandum of Law in support thereof (ECF No. 9), asserting that the plaintiff has not sufficiently pled a Fourth Amendment violation and that Lightner is entitled to qualified immunity on such a claim. That same day, the City of Charleston filed a separate Motion to Dismiss (ECF No. 10) and a Memorandum of Law in support thereof (ECF No. 11). The City's Memorandum of Law incorporates by reference the arguments made in Lightner's Memorandum of Law, and further asserts that the City cannot be held liable for Lightner's conduct under a theory of *respondeat superior*. The undersigned will address each motion in turn.

## **STANDARD OF REVIEW**

The defendants' motions assert that the plaintiff's Complaint fails to state a claim upon which relief can be granted. In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

The defendants' motions will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

### A.     Senior Officer Lightner's Motion to Dismiss.

As noted in Lightner's Memorandum of Law, the plaintiff's Complaint does not specifically plead that defendant Lightner's conduct violated the Fourth Amendment. Nevertheless, construing the Complaint liberally, as this court must, the allegations contained therein appear to allege such a violation. Defendant Lightner's Memorandum of Law addresses the Fourth Amendment claim as follows:

> Plaintiff appears to allege that Officer Lightner should not have temporarily confiscated his pistol or run the serial number on the pistol without probable cause. Ostensibly, these allegations translate to a claim

4

>that Officer Lightner's search of Plaintiff and seizure of his pistol were unreasonable in violation of the Fourth Amendment. However, even if Plaintiff's allegations are taken as true, they are insufficient to state a claim under the Fourth Amendment. Furthermore, because the plaintiff fails to allege a violation of any of his clearly established constitutional rights, Officer Lightner is entitled to qualified immunity.

(ECF No. 9 at 4).

Lightner's Memorandum addresses the standards governing a Fourth Amendment search and seizure claim, emphasizing that "the touchstone of [the Fourth Amendment] inquiry is reasonableness." *Abney v. Coe*, 493 F.3d 412, 419 (4th Cir. 2007). His Memorandum further states:

>It is well-settled that a police officer may stop and briefly detain a person for investigative purposes when there is reasonable suspicion, based on articulable facts, that criminal activity is afoot. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 274 (2002).[1]
>
>>An officer conducting a brief investigatory detention, commonly referred to as a *Terry* stop [FN omitted] must merely have an articulable and particularized reason to suspect criminal activity prior to the stop. *See Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *cf. Alabama v. White*, 496 U.S. 325, 330-31 (1990) ("[t]he Fourth Amendment requires 'some minimal level of objective justification.'" (citations omitted)). Once an officer possesses a reasonable, articulable suspicion of criminal activity, the officer may detain the suspect for further investigation. *Terry*, 392 U.S. at 30. Furthermore, "[i]f a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons. *Terry*, [392 U.S.] at 27.

(*Id.* at 5).

Lightner's Memorandum further asserts that the court must evaluate the "articulable suspicion" under the totality of the circumstances, taking in information that the officer knew at that time, and any reasonable inferences drawn therefrom, as well as the officer's general knowledge, experience and training. *See United States v.*

---

[1] In *Arvizu*, the Supreme Court notes that "reasonable suspicion" is a standard less demanding than probable cause, and "it falls considerably short of a preponderance of the evidence standard." 534 U.S. at 274.

5

*Perkins*, 363 F.3d 317, 321 (4th Cir. 2004); *see also United States v. Arvizu,* 34 U.S. at 273. ("[Police officers] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."). (ECF No. 9 at 5-6). Accordingly, Lightner emphasizes that "courts give broad deference to the inferences and deductions made by trained officers." (*Id.* at 6) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Lightner's Memorandum then addresses section 175-2-4.7 of the West Virginia Code of State Rules, which governs the hours during which a licensee of alcoholic liquor and nonintoxicating beer may dispense or permit consumption of such products. The regulation states as follows:

> No licensee shall sell, give or dispense alcoholic liquor or nonintoxicating beer, or permit the consumption thereof, on any licensed premises or in any rooms directly connected therewith between the hours of three o'clock a.m. (3:00 AM) and one o'clock p.m. (1:00 PM) on any Sunday . . ."

W. Va. C.S.R. § 175-2-4.7. Furthermore, subsection 4.8 provides:

> The licensed premises of all private clubs shall be closed for operation and cleared of all persons, including employees, thirty (30) minutes after the hours of sale of alcoholic liquors and nonintoxicating beer have expired.

W. Va. Code § 175-2-4.8. (ECF No. 9 at 6) (emphasis added). Thus, Lightner argues:

> In the present case, Officer Lightner observed that the Bar was apparently open in violation of West Virginia law. Plaintiff admittedly approached Officer Lightner at 4:20 a.m. on the morning of August 17, 2014, while Officer Lightner was conducting his investigation. When Officer Lightner began questioning him, Plaintiff said that he worked security at the Bar and was armed with a concealed weapon. Because Officer Lightner was actively investigating a potential crime at the Bar in the pre-dawn hours of August 17, 2014 and was approached by an unknown individual who admitted that he worked security for the bar and was carrying a concealed weapon, Officer Lightner possessed both an articulable suspicion that Plaintiff was involved in criminal activity and a reasonably prudent belief that his safety was endangered by Plaintiff's presence at the scene. Consequently, Officer Lightner was authorized to conduct a limited search of Plaintiff's outer clothing to discover any

6

>   weapons. *See Terry* and *Perkins*. Once Officer Lightner discovered and temporarily confiscated Plaintiff's pistol, the search ceased. Based on the foregoing case law, Plaintiff's allegations simply do not rise to the level of a violation of his Fourth Amendment rights. Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed.

(ECF No. 9 at 6-7).

Defendant Lightner further asserts that, because the plaintiff cannot establish the violation of a clearly-established constitutional right, such as the Fourth Amendment right against unreasonable searches and seizures, Lightner is entitled to qualified immunity for his conduct. His Memorandum states:

>   Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that ". . . their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 22727, 73 L. Ed.2d 396 (1982). When ruling on a qualified immunity claim, the court must consider two questions: ". . . (1) whether a constitutional or statutory right would have been violated on the facts alleged by the plaintiff; and (2) whether the right asserted was clearly established at the time of the alleged violation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001). Under *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009), the court need not consider these issues in any particular order.
>
>   As noted above, Plaintiff fails to allege a violation of his Fourth Amendment rights. For this reason alone, Officer Lightner is entitled to qualified immunity from Plaintiff's claims. *See Harlow* and *Saucier*, *supra*. However, even if the Court were to determine as a matter of law that Officer Lightner did not have a reasonably prudent belief that Plaintiff posed a threat to his safety, Officer Lightner would still be entitled to qualified immunity because any mistake that Officer Lightner made would be reasonable under the facts alleged in this case. Qualified immunity protects police officers who make reasonable mistakes as to the facts of a case and reasonable mistakes about what the law requires in a particular situation. *See Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001). Consequently, the Court should dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

(ECF No. 9 at 7-8).

7

On November 21, 2014, the plaintiff filed a Response to defendant Lightner's Motion to Dismiss (ECF No. 13). The plaintiff's Response summarily asserts that Lightner's conduct was unlawful and that qualified immunity is not available to an officer "who violates the color of law and one's civil rights." (*Id.*) To his Response, the plaintiff also attached a copy of his Complaint, to demonstrate the allegations he made against Lightner, as well as what appears to be typed excerpts concerning the law on qualified immunity, false arrest, malicious prosecution, excessive force, failure to intervene and the defense of failure to state a claim upon which relief can be granted. (*Id.*, Attach. 1 at 1-5). The plaintiff's Response does not attempt to tie this discussion of legal terms to his own case.

Officer Lightner was in the process of investigating a potential violation of state laws by a liquor licensee, when the plaintiff arrived in the parking lot of the Bar after legal hours. Pursuant to *Terry v. Ohio*, Officer Lightner permissibly requested the identity of the plaintiff, asked him whether he was armed, and had the right to pat down the plaintiff to locate his weapon and temporarily confiscate it for his own safety. Under the totality of these circumstances, the undersigned proposes that the presiding District Judge **FIND** that Officer Lightner's conduct was reasonable and did not violate the Fourth Amendment. Alternatively, even if the court were to determine that defendant Lightner's conduct did violate the Fourth Amendment, the undersigned proposes that the presiding District Judge **FIND** that Lightner made a reasonable mistake for which he would still be entitled to qualified immunity.

Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against defendant Lightner; therefore, that the claim against Lightner must be

dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in accordance with the dictates of *Twombly* and *Iqbal, supra*.

### B. The City of Charleston's Motion to Dismiss.

The plaintiff's Complaint does not contain any specific allegations against the City of Charleston. Nevertheless, based upon a liberal reading of the Complaint and the plaintiff's naming of the City as a defendant herein, the City of Charleston has construed the claim against it to be a claim of *respondeat superior*; that is, an attempt to hold the City liable for the conduct of defendant Lightner solely because the City employs him, which is not permissible under section 1983. The City's Memorandum states:

> Plaintiff may bring a Fourth Amendment constitutional claim against the City only through the civil cause of action created by 42 U.S.C. § 1983. While "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief [for constitutional violations]," such a suit may [be] brought only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978); *see also Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (finding that, to establish liability, a plaintiff must demonstrate that: (1) a government actor deprived the plaintiff of his federal rights; and (2) the harm was the result of an official policy or custom of the local entity).
> 
> "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Rather,
> 
>> [t]o state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right.
> 
> *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011) (quoting *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008) (internal citations omitted)).

(ECF No. 11 at 2-3).

The City of Charleston asserts that the plaintiff's Complaint fails to state a plausible Fourth Amendment claim, and that establishing such a constitutional violation is a prerequisite to a *Monell* claim. Thus, the City asserts that, to the extent that the plaintiff is making a *Monell* claim, it fails as a matter of law. *See, e.g., Trull v. Smolka*, 411 F. App'x 651, 657-58 (4th Cir. 2011) ("[T]he first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. **Having determined that there was no deprivation of a constitutional right, this claim fails.**") (emphasis added and internal quotations omitted by defendant). Moreover, the plaintiff's Complaint fails to even allege any municipal policy or custom that would support a *Monell* claim. Thus, the City asserts that the plaintiff's Complaint is subject to dismissal.

The undersigned agrees. The plaintiff's Complaint lacks specific allegations concerning the liability of the City of Charleston. The City cannot be held liable under a theory of *respondeat superior*. Furthermore, the Complaint fails to identify any particular policy or custom attributable to the City that the plaintiff claims to be the proximate cause of his alleged constitutional deprivation. Moreover, the undersigned has already proposed that the presiding District Judge find that defendant Lightner's conduct did not violate the Fourth Amendment and, thus, there is no basis for a *Monell* claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state any plausible claim against the City of Charleston, and that that the Complaint against the City must also be dismissed

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in accordance with the dictates of *Twombly* and *Iqbal, supra.*

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF Nos. 8 and 10), and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff, and to transmit a copy to counsel of record.

<u>August 5, 2015</u>

Dwane L. Tinsley
United States Magistrate Judge